STATE of MARYLAND for the use of Florence BARRESI and Joseph Barresi, Jr.

v.

Robert Curtis HATCH and United Aircraft Company.

Civ. No. 8569.

United States District Court
D. Connecticut.

Oct. 4, 1961.

1

Schechter & Schechter, by Eugene L. Wishod, Smithtown, N. Y., for plaintiffs.

Wiggin & Dana, by John D. Fassett, New Haven, Conn., for defendant The United Aircraft Corp.

BLUMENFELD, District Judge.

■ The corporate defendant's motion for summary judgment brought under Rule 56 F.R.Civ.P., 28 U.S.C.A., is based upon a claim that the factual issue of whether the defendant Hatch was "acting in the course of and within the scope of his employment as an employee * * of the defendant" at the time when his operation of an automobile resulted in an accident must be resolved against the plaintiff. In support of its motion, it offers:

1. The pleadings on file;

2. An interrogatory propounded to the plaintiff and her answer thereto;

3. The transcript of the deposition of Hatch, the employee; and

4. A further affidavit consisting of two exhibits: "A", the expense report of Hatch; and "B", a copy of the section "The Manual of Pro-

cedure for Field Service Representatives", issued by the defendant pertaining to expense accounts.

The defendant's answer denying the allegation that Hatch was acting in the course of and within the scope of his employment raises the factual issue. It is interesting to note that the answer filed by Hatch himself does not expressly deny that same allegation which appears in the second and third paragraph of the plaintiff's complaint. He states rather that he "has no knowledge or information thereof sufficient to form a belief". No significant weight is given to his pleading, however, since under our practice such language in a pleading is, in effect, a denial.

■■ The defendant seeks to pierce the allegations of fact in the complaint by the use of the plaintiff's answer to an interrogatory requesting her to specify each fact claimed to form a basis for the allegation that Hatch was "acting in the course of and within the scope of his employment as an employee" of the corporate defendant. Florence Barresi is the widow of Joseph Walter Barresi who lost his life in the accident. There is nothing whatsoever to show that she had any knowledge of her own about the employment of Hatch by the defendant or of his duties for the defendant. Although answers to interrogatories are not specifically mentioned as a basis for court action upon a motion for summary judgment under 56(c) it is entirely appropriate that answers made by a party pursuant to Rule 33 should be considered. See 6 Moore's Federal Practice, page 2078. Professor Moore agrees that they should be considered "so far as they are admissible under the rules of evidence". Turning to Rule 56(e), it is noted that where affidavits are used to support a motion for summary judgment such affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein". Thus, although answers to interrogatories under Rule 33 are permissible in sup-

port of the defendant's motion, they are subject to the same infirmities as an affidavit would be under 56(e). It seems perfectly evident that her answers are not based upon personal knowledge, and that she would not be competent to testify to facts relating to Hatch's employment. Her answers have no probative value on a motion for summary judgment. Mercantile National Bank at Dallas v. Franklin Life Insurance Co., 5 Cir., 1957, 248 F.2d 57, 59.

■ The deposition of the defendant Hatch, taken in behalf of the plaintiff, revealed in some detail the nature of Hatch's employment, from whom he received orders, and who his supervisor was. In the questioning of Hatch by counsel for the moving defendant there was an apparent recognition by him that the applicable principle of law requires that in determining whether Hatch was acting within the scope of his employment at the time of this accident many circumstances must be taken into account: was there a deviation from his master's business to his own; if so, what was its extent and nature relative to time and place and circumstances, and what were the many other details and facts relating to his authority which formed a part of and truly characterized the actions of Hatch at the critical time. In most cases, no definite and determinative test can be made other than to apply the standard of whether the action of the servant was reasonable in the light of his employment and the circumstances surrounding his act. This is a question which Hatch himself was not able to answer categorically, as appears from page 26 of his deposition. Ordinarily, Hatch testified, he did include in his record of mileage expense the travel in going to a restaurant and return. In this particular case having gone for a considerable distance to Washington for dinner he did not include the travel to and from Washington when he submitted his expense account. He was asked: "Why did you draw a distinction in your mind?" Answer: "Well, I believe it's company policy, although I have never

tested it, that—I presume they would object to this as driving too far for a meal, and this would not be a normal distance." Then, on page 27, he testified that instructions from the company did not set forth a distance limit to establish whether he could properly have charged for the trip in question.

No written contract, no written job classification and no affidavit or deposition of Hatch's supervisor or any other officer or agent of the corporate defendant having knowledge or means of knowledge has been presented to establish definitively the exact scope of Hatch's authority with respect to the use of his automobile on company business while away from home acting as a consultant and company representative.

The plaintiff contends that determination of the factual issue of whether Hatch was acting within the scope of his employment depends on inferences to be drawn from all the facts and that all the facts were not before the court. It is also claimed that the witness's demeanor is an important clue to his credibility and that because one of the important considerations bearing upon the question of whether Hatch was acting within the scope of his employment was his intent, his oral testimony relating to that particular fact should be subjected to cross examination and a trial where his demeanor can be observed by the trier. See Colby v. Klune, 2 Cir., 1949, 178 F.2d 872, 873, 874.

■■ It is clear that the determination of the ultimate fact whether Hatch was acting in the course of and within the scope of his employment as an employee depends on inferences to be drawn from subordinate facts. The widely recognized rule for determining the incontrovertibility of the fact in issue whether of a conclusory nature or not is that where pertinent facts are undisputed, the sole question before the court is whether the conclusions to be drawn therefrom are so clear that no reasonable man could differ on the result. Bordonaro v. Westinghouse Electric Corp., 2 Cir., 1961, 287 F.2d 954, 956.

 That the relationship of employer and employee existed is not questioned. The question is whether at a particular time and place Hatch was acting within the scope of his employment. The fact that he drove his own automobile is not determinative of the question since it was clearly contemplated that he would provide his own automobile for use on company business. The fact that in this particular case he did not put in a claim for mileage allowance is not determinative under the circumstances referred to above. The plaintiff's decedent was not solely a social friend or a stranger, he was a fellow member of a "team" of engineers working closely together to secure acceptance of a project in which their respective employers had undertaken to join their forces and combine their efforts in a business venture which might well call upon Hatch to exercise more cooperation with and more solicitude for the decedent than for a fellow employee. It is not impossible that the defendant would have regarded Hatch's trip to Washington as an exercise of good business judgment in its behalf and within his authority.

In this circuit strong reluctance to employ the summary judgment procedure in lieu of a trial has developed after weighing the merits of a jury trial as against the advantages of a speedy disposition of a case in the wise administration of justice. As this court agrees with those decisions, no good purpose would be gained by going over the same ground they have covered adequately. For a full discussion of the underlying interests considered by the courts in this circuit see Moore's Federal Practice, Ed. 2, Vol. 6, pp. 2106 et seq.

A quotation from the opinion of Judge Learned Hand in Bozant v. Bank of New York, 2 Cir., 1946, 156 F.2d 787, 790 is apt:

> "In conclusion we cannot avoid observing that the case is another mistaken effort to save time by an attempt to dispose of a complicated state of facts on motion for summary judgment. This is especially true when the plaintiff must rely for his case on what he can draw out of the defendant."

What has been presented to the court does not satisfy the burden of establishing that reasonable men could not differ in determining that Hatch was not acting in the course of and within the scope of his employment at the time of the accident.

The motion for summary judgment is denied.