**NATIONAL INSTRUMENT LABORATORIES, INC., a corporation of the State of Maryland, Plaintiff,**

v.

**HYCEL, INC., a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 75–87.**

United States District Court,
D. Delaware.

Oct. 26, 1979.

William Prickett and Richard I. G. Jones, Prickett, Sanders, Jones, Elliott & Kristol, Wilmington, Del., for plaintiff.

Stuart B. Young, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant; Alden D. Holford, Houston, Tex., of counsel.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Defendant Hycel has presented a motion for summary judgment on Count VI of plaintiff National Instrument Laboratories' ("NIL") complaint. This count alleges that Hycel appropriated the work, expertise, trade secrets and proprietary information of NIL to its own advantage. Specifically, NIL alleges that Hycel copied the mechanical designs of NIL's flame photometer when, following a purchase of NIL's standalone photometer, defendant bought from NIL in 1970 a prototype flame photometer to be incorporated into its blood analyzer. At the time of the second purchase, the parties entered into an alleged confidential relationship which NIL charges was breached by Hycel's unauthorized use of the prototype photometer.

A hearing was held on September 28, 1979, and having fully considered the record, oral arguments, and briefs, the Court denies the motion for summary judgment.

For purposes of this motion, Hycel concedes both the existence of a confidential relationship with NIL and its copying of the mechanical section of the flame photometer, as alleged by NIL. It claims, however, that it is entitled to summary judgment since there is no genuine issue of fact as to NIL's possession of protectable trade secrets. Essentially, Hycel sets forth three grounds for asserting that the workings of the flame photometer are not trade secrets. First, Hycel contends that the mechanical portion of the flame photometer marketed by NIL and allegedly copied by Hycel was fully fathomable upon inspection; second, that the photometer was a standard industry device at the time it was purchased by Hycel and third, that the prototype photometer was not mechanically different from the stand-alone photometer which had been previously marketed by NIL and which Hycel had previously purchased on the open market. Thus, Hycel claims that even if the flame photometer contained trade secrets at one time, the fathomability of the device upon inspection and the public mar-

keting of a standard device have served to strip NIL of its protectable trade secrets. Hycel asserts that this is especially true with regard to NIL's claim against Hycel, since Hycel had lawfully purchased the device along with its trade secrets, prior to the commencement of their confidential relationship.

Hycel relies upon Comment b to § 757, Restatement, Torts:

The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret. Matters which are completely disclosed by the goods which one markets cannot be his secret.

In contrast, in support of Count VI, NIL relies upon Restatement of Torts § 757 which reads:

One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him. . . .

NIL denies that the workings of the flame photometer were fathomable upon inspection, or that they were standard in the industry. At oral argument, counsel for NIL did concede that the mechanical portion of the prototype photometer did not differ from that of the stand-alone photometer. However, in NIL's view, this does not entitle Hycel to summary judgment, since Hycel was only able to copy NIL's device through use of the information obtained via the confidential relationship.

■ Before reaching the merits of this motion, a threshold question of choice of law is presented. NIL, a Maryland corporation, contends that Texas law should apply to Count VI, while Hycel, a Delaware corporation with its sole place of business in Texas, contends that Maryland law should be applicable. As a federal court sitting in Delaware, in diversity jurisdiction cases, such as the instant case, the Court must apply the substantive rules of law of Delaware, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its choice of law rules. *Klaxon Co. v. Stentor Electric Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ When the highest state court has not yet addressed an issue, the federal courts may look to lower state court decisions for guidance as to how the higher court would rule. *Commissioner v. Estate of Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *National Surety Corp. v. Midland Bank*, 551 F.2d 21 (3d Cir. 1977). Count VI is a tort claim, alleging misappropriation of trade secrets. In such cases, Delaware law is well established that the place of the wrong controls (lex loci delicti). *Friday v. Smoot*, 211 A.2d 594 (Del.1965); see *Burke v. Elliott*, 606 F.2d 375 (3d Cir. Sept. 7, 1979). Both parties are in agreement as to this, but divide on the question of where the wrong occurred. *Data General Corp. v. Digital Computer Controls*, 357 A.2d 105 (Del.Ch.1975), controls the choice of applicable state law. It held that in a suit for unfair competition and violation of trade secrets, the wrong occurs where the defendant misappropriates or misuses plaintiff's secret. Since Hycel allegedly copied the plaintiff's photometer in Texas, Texas law is applicable to this case.

The well established standard for deciding a motion for summary judgment was expressed by the Third Circuit in *Scott v. Plante*, 532 F.2d 939 (3d Cir. 1976):

Summary judgment may only be granted if, taking the nonmovant's allegations as true and drawing all inferences in his favor, the court is convinced from its review of the evidential sources available that no genuine issue as to a material fact remains for trial, and that the moving party is entitled to judgment as a matter of law.

532 F.2d at 945.

■ Hycel first asserts that the evidence presents no genuine issue of fact as to the fathomability of the photometer upon inspection and scrutiny, and that this entitles

it to summary judgment as a matter of law.[1] According to Texas law, however, Hycel's contention fails. In *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d 149 (1958), the Texas Supreme Court held that a device loses its protection as a trade secret if it is a "simple device, widely circulated, the construction of which was ascertainable at a glance." 314 S.W.2d at 788. The few cases in which Texas has held that no trade secret exists by reason of fathomability upon inspection have involved very simple and obvious devices. For example, in *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278 (1951), a combination walking stick-fishing pole was held not to be a trade secret since it was "based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced machinist that might see one for the first time or purchase it on the open market." 240 S.W.2d at 279–80. *See also Furr's, Inc. v. United Specialty Advertising Co.*, 338 S.W.2d 762 (Tex.Civ.App.1960) (bonus cards, to be punched after each customer purchase, were self-explanatory on their face and therefore not a trade secret).

Defendant Hycel has not demonstrated that the evidence leads to the undisputed conclusion that the flame photometer at issue in this case is such a simple and obvious device, "the construction of which was ascertainable at a glance." In the Court's view, Hycel has not even demonstrated that the evidence is clear that the photometer was fathomable upon inspection and scrutiny.

Hycel relies upon a statement made by counsel for NIL at a discovery hearing before another judge in January, 1979. At that time, NIL was attempting to obtain Hycel's photometer so that its experts could examine the Hycel and the NIL devices and determine whether the Hycel device was in fact a copy of the NIL device. NIL's counsel, in an effort to modify or revoke a previously entered protective order, stated as follows:

> What is this device? Is it a great big secret? Of course not. We made the device. We sold it to everybody that we could. We didn't sell it only to them. We sold as many as we could to hospitals all over the place. And there are these devices all around. It is no secret. Anybody who has one can look at it. It is widely held. We sold it to them. *And everybody who has one can take it apart and look at it.*[2]

Hycel contends that this statement proves that the device was not a trade secret and was fathomable upon inspection and scrutiny, and should be treated as a judicial admission binding on the plaintiff. Even assuming that this statement is such an admission,[3] it is susceptible of several interpretations. One, of course, is that which Hycel would put forth; namely, that the photometer was fathomable upon inspection and scrutiny and was not a trade secret. A contrary inference to be drawn from counsel's statement recognizes that NIL was merely attempting, at the hearing, to obtain the device from Hycel so that it could look at it and compare it with the

---

1. Hycel cites Milgrim, *Trade Secrets* § 205[2] in support of this assertion:

   Thus, it is an almost undisputed proposition that when an article, the "secret" nature of which is fathomable upon scrutiny and inspection, is marketed, the "secret" is lost. Milgrim references several Texas cases, which Hycel contends support its view: *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278 (Tex. 1951); *Furr's, Inc. v. United Specialty Advertising Co.*, 338 S.W.2d 762 (Tex.Civ.App.1960). These two cases are then compared by Milgrim to *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.*, 158 Tex. 594, 314 S.W.2d 782, *cert. denied*, 358 U.S. 898, 79 S.Ct. 223, 3 L.Ed.2d

149 (1958). These cases are addressed by the Court below.

2. Doc. No. 112, pp. 58–59 (emphasis added).

3. Wigmore defines a judicial admission as "an express waiver made in court or preparatory to trial by the party or his attorney conceding for the purposes of the trial the truth of some alleged fact" and states that it must be "of the nature of an admission, . . . an act of waiver, relating to the opponents proof of the fact, and not merely a statement of assertion or concession made for some independent purpose." Wigmore, *Evidence*, §§ 2588, 2594.

NIL device. At that time, NIL was being prevented by reason of an outstanding protective order from even looking at the Hycel device, and its attorney was attempting to persuade the Court that since everybody else could already look at the Hycel device, NIL should also be able to do so. Of course, on a motion for summary judgment the Court must draw all inferences in favor of the non-movant. Therefore, the Court does not treat counsel's statement as a judicial admission that the flame photometer was fathomable on inspection and scrutiny, and it is certainly not evidence that the device was "ascertainable at a glance." Counsel for Hycel conceded at oral argument that absent his opponent's statement, there is no evidence on the record in support of Hycel's "fathomability" contention. This ground of defendant's argument, therefore, does not merit summary judgment.

Hycel's second contention is that the flame photometer was not a trade secret because it was a standard industry item. It relies on the following comment to section 757 Restatement, Torts adopted by the Texas Supreme Court in *Wissman v. Boucher, supra*:

> The subject matter of a trade secret must be secret. Matters of general knowledge in an industry cannot be appropriated by one as his secret.

Comment b, § 757, Restatement, Torts.

While Hycel has pointed to some evidence on the record indicating that the NIL photometer was a standard instrument,[4] there exists a genuine issue of fact as to whether this is true. NIL's answers to interrogatories, incorporated by Mr. Weichbrod in his affidavit,[5] state that several features of the prototype photometer were either novel concepts or designed specifically for Hycel.[6] Moreover, it is certainly not clear that the

workings of the device were "matters of general knowledge" in the relevant industry. *See Ventura Mfg. Co. v. Locke,* 454 S.W.2d 431 (Tex.Civ.App.1970).

Hycel's final contention is that, having purchased NIL's stand-alone photometer on the open market prior to the establishment of a confidential relationship with NIL, Hycel cannot be held liable for misappropriation of trade secrets. This argument assumes that, as admitted by NIL, the mechanical portion of the prototype photometer did not vary from the stand-alone photometer previously purchased. An analysis of Texas law indicates that this final contention must fail.

In *K & G Tool & Service Co., supra,* the Texas Supreme Court upheld an award of misappropriation of trade secrets against a claim by the defendant that the plaintiff's secret was available to the defendant by lawful means, outside of the confidential relationship between them. The court wrote:

> It is unquestionably lawful for a person to gain possession, through proper means, of his competitor's product and, through inspection and analysis, create a duplicate, unless, of course, the item is patented. But the mere fact that such lawful acquisition is available does not mean that he may, through a breach of confidence, gain the information in usable form and escape the efforts of inspection and analysis. "The fact that a trade secret is of such a nature that it can be discovered by experimentation or other fair and lawful means does not deprive its owner of the right to protection from those who would secure possession of it by unfair means." Nims, Unfair Competition and Trade Marks, Sec. 148.

314 S.W.2d at 788, quoting *Smith v. Dravo Corp.,* 203 F.2d 369, 375 (7th Cir. 1953).

---

4. Doc. No. 144, pp. 43–44 (Deposition of Joseph A. Weichbrod).

5. Doc. No. 163, incorporated by Doc. No. 168. Before these answers were incorporated by Mr. Weichbrod, Hycel objected to their use as summary judgment evidence, because they were not sworn on personal knowledge. While there is legal authority for this contention, *see H. B. Zachry Co. v. O'Brien,* 378 F.2d 423, 425–26

(10th Cir. 1967); *S & S Logging Co. v. Barker,* 366 F.2d 617, 624–25 n.7 (9th Cir. 1966); *Maryland v. Hatch,* 198 F.Supp. 1, 2–3 (D.Conn. 1961), it has been mooted by Mr. Weichbrod's affidavit, sworn on personal knowledge, incorporating these answers.

6. Doc. No. 163, pp. 3–4.

Likewise, in *Elcor Chemical Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204 (Tex.Civ.App. 1973), the court rejected a similar argument by stating that "whereas information could have been obtained from other sources the point is that such was not done. . . . Instead [defendants] gained this knowledge from [plaintiff] by way of their confidential relationship and in so doing they incurred a duty not to use it to [plaintiff's] detriment." 494 S.W.2d at 212–13. *See also Ventura Mfg. Co. v. Locke, supra* ("the process or device may be a trade secret although defendant could have gained knowledge of same from a study of plaintiff's marketed product. The point is that he did not do so.").

Thus, in this case, the crucial inquiry under Texas law would appear to be not whether Hycel could have or did in fact obtain NIL's *device* by lawful means, but whether or not Hycel obtained *information* through the confidential relationship that enabled it to copy NIL's device. There is evidence in the record indicating that NIL turned over to Hycel information pertaining to the workings of the photometer pursuant to the confidential relationship between NIL and Hycel.[7] The fact that Hycel entered into a confidential relationship that enabled it to receive such information creates an inference that the information was used by Hycel in developing its photometer. In light of this inference, Hycel cannot conclusively demonstrate on the record that it determined the workings of the photometer without resort to the confidential relationship and the information obtained thereby.

Hycel relies upon § 758, Restatement, Torts, as legal authority that in purchasing the stand-alone photometer, Hycel purchased the right to use any secrets incorporated in the device. Section 758 states:

> One who learns another's trade secret from a third person without notice that it is secret and that the third person's disclosure is a breach of his duty to the other, or who learns the secret through a mistake without notice of the secrecy and the mistake,

> (a) is not liable to the other for a disclosure or use of the secret prior to receipt of such notice, and
> (b) is liable to the other for a disclosure or use of the secret after the receipt of such notice, unless prior thereto he has in good faith paid value for the secret or has so changed his position that to subject him to liability would be inequitable.

Once again, there is no uncontroverted evidence that Hycel fully learned NIL's trade secrets prior to the commencement of the confidential relationship. The mere purchase of the device did not entitle Hycel to copy it; that would only be permitted if it could be proved that Hycel learned all there was to learn about the workings of the photometer prior to the commencement of the confidential relationship. Since the fathomability upon inspection of the device remains an open issue, and since Hycel has not conclusively demonstrated that it did not use any information obtained through the confidential relationship, summary judgment based upon section 758, Restatement, Torts is precluded.

Finally, Hycel cites the companion cases of *Sears, Roebuck and Co. v. Stiffel Co.*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and *Compco Corp. v. Day-Brite, Inc.*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), and asserts that since the photometer is an unpatented item, its copying is permissible, and any attempt to prohibit such copying would violate congressional intent in enacting the patent laws. The short answer to Hycel's final contention is that the Supreme Court has expressly held state trade secret law is not pre-empted by the federal patent laws. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974).

For the reasons set forth above, an order will be entered denying defendant's motion for summary judgment on Count VI.

---

7. Doc. No. 144, pp. 56–57.